Joseph H. Harrington
United States Attorney
Eastern District of Washington
David M. Herzog
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL SHANE LEAVITT,<br><br>Defendant. | No. 2:18-CR-00177-TOR-1<br><br>United States' Sentencing Memorandum<br><br>Sentencing:<br>June 12, 2019, at 9:00 a.m.<br><br>Court:<br>Hon. Thomas O. Rice<br>Chief United States District Judge |

Plaintiff United States of America, by and through Joseph A. Harrington, United States Attorney for the Eastern District of Washington, and David M. Herzog, Assistant United States Attorney for the Eastern District of Washington, hereby submits the following Sentencing Memorandum with regard to Defendant Michael Shane Leavitt ("Defendant").

Pursuant to the Rule 11(c)(1)(C) plea agreement in this case (ECF No. 45), the United States recommends the following sentence: 121 months in custody, 20 years of supervised release, no fine, restitution, a mandatory special assessment of $100, and a mandatory special assessment of $5,000 absent a judicial finding of indigence.

United States' Sentencing Position – LEAVITT – page i

The United States' sentencing position is based upon the attached memorandum of points and authorities, the under seal exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 29, 2019

                    Joseph H. Harrington
                    United States Attorney

                    *s/ David M. Herzog*
                    David M. Herzog
                    Assistant United States Attorney

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    Introduction

On March 14, 2019, pursuant to a Plea Agreement entered into under Federal Rule of Criminal Procedure 11(c)(1)(C), Defendant Michael Shane Leavitt ("Defendant") pleaded guilty to Count One of an Indictment charging him with Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2).  (ECF Nos. 1, 45.)  The Court accepted Defendant's plea, and reserved judgment regarding Defendant's Plea Agreement, which contemplates a sentencing range of 97-121 months in custody under Rule 11(c)(1)(C).  The United States urges the Court to accept the Plea Agreement, and sentence Defendant within this range: 121 months in custody, to be followed by 20 years of supervised release.

## II.    Facts

The relevant facts are set forth in the *Factual Basis and Statement of Facts* section of the plea agreement (ECF No. 45, ¶ 6) and the *Offense Conduct* section of the Presentence Report ("PSIR") (ECF No. 48, ¶¶ 9-20).  The United States has no objections to the PSIR with regard to its recitation of the facts.  In sum, Defendant used his cellular telephone to record images up the skirt of a 9-year-old girl in a fourth-grade class he was teaching, which led to search warrants for his digital devices.  *Id.*  In Defendant's devices investigators recovered numerous images of child pornography.  *Id.*  Defendant admitted to viewing child pornography in his truck and masturbating to it, and investigators recovered from his truck a used condom with what appeared to be

semen in it, along with more than 25 additional condoms. *Id.* Defendant admitted to investigators that he attempted to obtain images of the groins of prepubescent girls in his class, and that he started to record images of prepubescent girls. *Id.* In a written statement, Defendant acknowledged that he had in fact put his cell phone up the skirt of his student, attempting to obtain a video, that he searched for and found child pornography on the Internet for three or four years prior to his arrest, that he used his devices to view child pornography, and that his sexual interest was in 10-to-14-year-old girls, posing to display their vaginas. *Id.*

Within Defendant's digital devices investigators recovered searches for "Lolita preteen CP," "best preteen model," and "preteen porn," among other search terms related to child pornography ("CP"). *Id.* Defendant's collection of child pornography included images that depicted sodomy, oral copulation, and the vaginal penetration of prepubescent females by adult males, as well as voyeuristic images of pubescent females. *Id.* Defendant agreed that his collection included minors under the age of 12, and that the material he possessed portrayed sadistic and masochistic images or other depictions of violence. *Id.*

## III. Analysis of the Plea Agreement and Presentence Report

Pursuant to Rule 11(c)(1)(C), the parties have agreed that the following sentence is appropriate: 97-121 months in custody, ten to twenty years of supervised release, restitution, a mandatory special assessment of $100, and a special assessment of $5,000 absent a judicial finding of indigence. (ECF No. 45, ¶¶ 1, 2, 9, 10, 14.)

For purposes of calculating the appropriate range under the United States Sentencing Guidelines (the "Guidelines"), the United States, Defendant, and the Probation Office all agree that Defendant's final adjusted offense level is Level 30:

| Offense Level / Enhancement | Level/Adj. | Guidelines Section |
|---|---|---|
| Base Offense Level: Receipt of child pornography | 22 | U.S.S.G. § 2G2.2(a)(2) |
| No evidence of distribution | -2 | U.S.S.G. § 2G2.2(b)(1) |
| Material involved children who had not attained the age of 12 | +2 | U.S.S.G. § 2G2.2(b)(2) |
| Material portrayed sadistic or masochistic conduct or other depictions of violence | +4 | U.S.S.G. § 2G2.2(b)(4) |
| Use of a computer | +2 | U.S.S.G. § 2G2.2(b)(6) |
| Conduct involved more than 600 images of child pornography | +5 | U.S.S.G. § 2G2.2(b)(7)(D) |
| Acceptance of Responsibility | -3 | U.S.S.G. § 3E1.1(a), (b) |
| Final Adjusted Offense Level | 30 | |

(ECF No. 45, ¶ 8; ECF No. 48, ¶¶ 27-40; ECF No. 50).[1]

---

[1] The United States reserved the right to argue for a two-level enhancement based on Defendant's abuse of a position of trust, pursuant to U.S.S.G. § 3B1.3. (ECF No. 45, ¶ 8(c).) The Guidelines require a two-level upward adjustment of a Defendant's base offense level "[i]f the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. In 1990, the Ninth Circuit concluded that "the primary trait that distinguishes a person in a position of trust from one who is not is the extent to which the position provides the freedom to commit a difficult-to-detect wrong." *United States v. Hill*, 915 F.2d 502, 506 (9th Cir. 1990). Under *Hill*, a teacher engaging in sexually inappropriate conduct with minor students outside the watchful eye of other adults warrants the enhancement. *See United States v. Stover*, 951 F.2d 364 (9th Cir. 1991) (abuse-of-trust enhancement proper where defendant "was an elementary school teacher in a small community" and "[c]hildren were allowed to associate with [him] freely because of his role as a teacher," and he sexually abused them in his apartment; "[b]ecause [he] was an elementary school teacher he gained the public trust of the community to associate freely with the young children . . . a trust relationship was established" and it was "nearly impossible for the parents to detect the improper activities" because the teacher had "unwatched and exclusive control" over the children

The Probation Officer concluded that Defendant's criminal history computation includes 1 total criminal history point, placing him in Criminal History Category I. (ECF No. 48, ¶ 59.) Defendant's Guidelines range is 97-121 months. The United States agreed to forgo Attempted Production of Child Pornography charges, and to dismiss the Child Pornography Possession charges in Count 2. (ECF No. 45, ¶ 7.)

**IV.    Defendant's Sentencing Position Regarding Recidivism and Treatment**

The United States has no objection to Defendant receiving sex offender treatment while in custody. With regard to the efficacy of treatment programs designed to reduce recidivism, the United States notes that studies in this area are necessarily unreliable: it is not possible to obtain an accurate actual-recidivism measurement because recidivism rates measure who gets *caught*, not who *engages in* additional conduct. In a world in which every single act of child exploitation were reported, investigated, and prosecuted,

---

for blocks of time). However, in *United States v. Contreras*, 581 F.3d 1163, 1168 (9th Cir. 2009), *opinion adopted in part, vacated in part*, 593 F.3d 1135 (9th Cir. 2010), the Ninth Circuit reversed its analysis in *Hill* to conclude that the relevant issue is not whether the position of trust permits "freedom to commit a difficult-to-detect wrong," but whether the defendant exercised "professional or managerial discretion." *Id.* Although a teacher has supervisory authority over his students, a teacher would appear to be "closer to—if not almost identical with—that of an ordinary bank teller or hotel clerk, persons the application note specifically instructs are not subject to the enhancement." *Contreras*, 581 F.3d at 1168. Indeed, the United States did not readily find a long string of cases after *Contreras* in which the abuse-of-trust enhancement applied to teachers who sexually abused their students. Accordingly, the United States does not seek this two-level enhancement pursuant to U.S.S.G. § 3B1.3. Nevertheless, because as a practical matter Defendant undoubtedly abused the position of trust he held as a teacher, the United States submits that the fact that he was a teacher warrants a sentence of 121 months, at the high end of the applicable range without the enhancement.

United States' Sentencing Position – LEAVITT – page 4

the treatment/recidivism rates cited by Defendant would be of more value. In the real world, however, there is no way to account for unreported, uninvestigated, or unprosecuted acts of child abuse that previous offenders commit. In addition, common sense suggests that defendants with prior child abuse convictions are *less* likely to be caught when they engage in recidivist conduct, because they have first-hand experience with what kinds of conduct caused them to be apprehended the first time.

**V.    The United States' Sentencing Recommendation**

In light of the Plea Agreement, Federal Rule of Criminal Procedure 11, the United States Sentencing Guidelines, and the factors set forth at 18 U.S.C. § 3553, the United States respectfully recommends the following sentence: 121 months in custody, twenty years of supervised release, no fine, restitution, and mandatory special assessments of $100 and $5,000 (absent a finding of indigence). The United States respectfully submits that such a sentence is appropriate in light of the factors set forth at 18 U.S.C. § 3553.

    **A.    Defendant Did Abuse His Position Of Trust As A Teacher, Warranting A Sentence At The High End Of The Range**

Defendant's conduct is a parent's nightmare. In addition to the specific trauma to the nine-year-old girl in his classroom, it is difficult to overstate how damaging Defendant's conduct is to the psychological and social well-being of schoolchildren, parents, and the rest of society. We simply cannot live in a community in which the act of sending a vulnerable child off to school puts her at risk of her teacher making her a sexual object and trying to obtain sexual images of her for his own gratification.

United States' Sentencing Position – LEAVITT – page 5

Defendant's conduct violates the sacred societal principle that it is the job of adults to *protect* the children in their care. We teach children to report to trusted figures of authority – teachers, firemen, city council members, ecclesiastical leaders – if other adults make them uncomfortable or engage in inappropriate conduct with them. Here, as Defendant trumpets in his sentencing position and letters of support, he served in numerous authority positions in the community in Warden – positions in which children should have been comfortable reporting misconduct *to him*. Defendant taught at an elementary school in a small community in which children were allowed to associate with him freely because of his role, and parents entrusted their children to him. But he was *also* a volunteer firefighter, a member of the Warden City Council, on various boards, and an ecclesiastical leader. When the fox is in charge of all the henhouses, where can the hens turn?

It was Defendant's very position *as* a teacher that put him in a position to obtain the sexualized photos and videos of children he continually sought; if he were a plumber or a factory worker he would never have been in a position to be alone with nine-year-old girls. A teacher using his position in the classroom to engage in sexually inappropriate conduct with his minor students, outside the watchful eye of other adults, may not warrant a two-level enhancement in the eyes of the Ninth Circuit, but it is a practical abuse of trust for which this Court should hold Defendant accountable.

But for the incredible wherewithal of that nine-year-old child disclosing to her mother that Mr. Leavitt had his phone under her skirt and was taking pictures of her,

United States' Sentencing Position – LEAVITT – page 6

Defendant might still be taking videos of his students. It is unclear whether Defendant targeted this particular victim because she did not speak English and he believed her to be less likely to report or less likely to be believed; what the Court does know is that he repeatedly took pictures of her and other students without their knowledge to satisfy his own predatory sexual interests. For these reasons, Defendant's conduct in this case is significantly more egregious than it would be if he were just another adult member of the community, and the high end of the range – 121 months – is appropriate.

### B. The Nature and Seriousness of the Offense and Defendant's Respect for the Law

Defendant's sentence must be significant. After law enforcement found more than 100 images of child pornography among 10,000 images on his devices, they stopped counting and simply extrapolated. There can be no question that Defendant fantasized about minor girls and their vaginas, and he masturbated into condoms in his truck while doing so. Based on Defendant's child pornography conduct – receipt and possession – coupled with his efforts to obtain live photographs of the children around whom he worked, his sexual interest in children is as clear as it is dangerous.

In addition to the risk he poses for the schoolchildren in Warden, Defendant's child pornography conduct also constitutes an ongoing harm to the children depicted in the images he possessed and distributed. Defendant also participated in – and created a market for – additional images of child abuse. As the Supreme Court has recognized, the prevention of sexual exploitation and abuse of children is an "objective of surpassing

importance." *New York v. Ferber*, 458 U.S. 747, 756 (1982). Unsurprisingly, "[t]he legislative judgment as well as the judgment found in the relevant literature, is that the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." *Id.* at 758. This harm is caused not only by the abusive acts perpetrated during the production of child pornography, but also the enduring record of the abuse:

> [T]he materials produced by child pornographers permanently record the victim's abuse. The pornography's continued existence causes the child victims continuing harm by haunting the children in the years to come. The . . . ban on possession and viewing encourages the possessors of these materials to destroy them. Second, encouraging the destruction of these materials is also desirable because evidence suggests that pedophiles use child pornography to seduce other children into sexual activity.

*Osborne v. Ohio*, 495 U.S. 103, 111 (1990) (citations omitted). A sexually abused child who has been photographed must go through life knowing that these images are circulating within the mass distribution system for child pornography. *Ferber*, 458 U.S. at 758 n.9 & 760 n.10 (discussing harms caused by child pornography). A 121-month sentence is appropriate for Defendant, whose behavior demonstrates an ongoing lack of respect for the norms of society and the sanctity of children, including his own students.

  **C.**  **Defendant's Personal History and Characteristics**

  Defendant's personal history and characteristics do not absolve him of responsibility for his actions. He has multiple convictions for Driving Under the Influence, which, standing alone, demonstrate a willingness to engage in dangerous conduct. But the fact that he has no prior child abuse convictions does not erase his

United States' Sentencing Position – LEAVITT – page 8

admitted ongoing sexual interest in children. The United States does not see any significant mitigating factors in this case. To the contrary, Defendant's many leadership roles in society are *aggravating*, not mitigating – they put him in a position to be beyond reproach, which allowed him to engage in his predatory conduct under the cover of respectability.

### D.   Just Punishment

Defendant's child pornography and child exploitation conduct demands significant punishment, and the only mechanism for creating accountability in this process is the sentence imposed by this Court. A sentence of 121 months is necessary to punish Defendant for his reprehensible conduct.

### E.   Deterrence

A 121-month sentence is necessary to deter Defendant from engaging in additional child exploitation offenses and to deter other people who have sexual interest in children from engaging in similar conduct. The Court's sentence must be so unpalatable that Defendant and others who are inclined to act on their sexual interest in children are dissuaded from doing so.

### F.   Protection of the Public

The need to protect the community is at its apex with this Defendant. For years, he took on roles in society that put him in positions of authority and leadership, all the while seeking out sexual gratification from images of children in his community and on the Internet. Defendant presents an ongoing danger to the community, and a significant

sentence of more than ten years is necessary because it will protect the girls of Eastern Washington for a long period.

### G.     Avoidance of Unwarranted Sentencing Disparities

Mindful that the Guidelines must be "the starting point and the initial benchmark," *United States v. Carty,* 520 F.3d 984, 991–92 (9th Cir. 2008), the United States submits that a sentence of 121 months is appropriate in this case.  It is not all sentencing disparities that are forbidden by the statute, only *unwarranted* sentencing disparities.  Defendant is not similarly-situated to other Defendants in this District who are *not* teachers, firemen, and on their city councils and are sentenced to 60 months for child pornography receipt and possession.  His conduct was far more egregious because of his access to children and his ability to hide in plain sight because of his roles in the community.  A sentence of 121 months – which, ultimately, is a Guidelines sentence – is appropriate in this case and does not create unwarranted sentencing disparities.

### H.     Fine, Special Penalty Assessment, and Forfeiture

Pursuant to the plea agreement, the United States and Defendant are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.  The Probation Officer has analyzed Defendant's financial condition and has concluded that he does not have the financial means, assets, and/or resources available to reasonably make payment on any additional financial obligation imposed by the Court, other than restitution or special penalty assessments.  Accordingly, the United States does not request a fine.  The $100 special assessment is mandatory, and the

United States' Sentencing Position – LEAVITT – page 10

$5,000 special assessment is mandatory absent a finding of indigence. The United States will defer to the Court regarding the applicability of that special assessment. A preliminary order of forfeiture has been submitted to the Court.

## I.   Restitution

The United States has received a restitution request and victim impact statements, which the United States is submitting for the Court's consideration as Exhibits. The parties continue to negotiate restitution figures in this case, and the United States anticipates having additional restitution information at the sentencing hearing.

## VI.   Conclusion

For the foregoing reasons, the United States recommends that the Court apply a total offense level of 30 and conclude that Defendant is in Criminal History Category I, yielding a Sentencing Guidelines range of 97-121 months. Pursuant to the Rule 11 Plea Agreement, the United States recommends a sentence of 121 months in custody, twenty years of supervised release, no fine, special assessments, and restitution.

Dated: May 29, 2019

Joseph H. Harrington
United States Attorney

*s/ David M. Herzog*
David M. Herzog
Assistant United States Attorney

# CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to Defendant's counsel of record using the CM/ECF system.

*s/ David M. Herzog*
David M. Herzog
Assistant United States Attorney